IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 12, 2021 Session

**KIM RENAE NELSON v. LORING E. JUSTICE**

**Appeal from the Juvenile Court for Roane County**
**No. 16002          William B. Acree, Senior Judge**

_____

**No. E2020-01172-COA-R3-CV**
_____

During a previous appeal in this action involving issues of child support and custody, this Court awarded to the mother her attorney's fees incurred on appeal and remanded the matter to the trial court with instructions to determine the amount of such award. Following remand, the trial court conducted a hearing to consider evidence concerning the mother's attorney's fees. The trial court subsequently entered an order setting the mother's award of reasonable attorney's fees in the amount of $150,218.02. The father has appealed. Based upon our thorough review of the evidence presented, we modify the amount of attorney's fees awarded to the mother from $150,218.02 to $123,195.00. Accordingly, the trial court's judgment is affirmed as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed as Modified; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Linn Guerrero, Knoxville, Tennessee, for the appellant, Loring E. Justice.

Cecilia S. Petersen and David L. Valone, Knoxville, Tennessee, for the appellee, Kim Renae Nelson.

**OPINION**

I.  Factual and Procedural Background

This case, which originated as an action filed in the Roane County Juvenile Court ("trial court") to establish paternity, a co-parenting schedule, and child support, previously has been appealed to this Court on more than one occasion. In *Nelson v.*

*Justice*, No. E2017-00895-COA-R3-CV, 2019 WL 337040, at \*27 (Tenn. Ct. App. Jan. 25, 2019) ("*Nelson I*"), overruled on other grounds by *In re Mattie L.*, 618 S.W.3d 335 (Tenn. 2021), the father, Loring Justice ("Father"), appealed the trial court's judgment, which, *inter alia*, restricted the co-parenting time of Father with the parties' minor child ("the Child") and awarded the mother, Kim Nelson ("Mother"), her attorney's fees incurred during the proceedings below.[1] This Court affirmed the trial court's judgment, also noting that Mother had sought an award of attorney's fees on appeal. *See id.* In response to Mother's request for an award of fees, this Court concluded in pertinent part:

> Mother has prevailed on every issue on appeal, and Father's brief is largely a compilation of conclusory statements with little actual argument or citation to authority. As such, we exercise our discretion to award Mother her attorney fees incurred on appeal.
>
> \* \* \*
>
> The judgment of the trial court is affirmed, and this matter is remanded for a determination of Mother's attorney fees incurred on appeal.

*Nelson I*, 2019 WL 337040, at \*27-28 (citing Tennessee Code Annotated § 36-5-103(c) (2017), which in the version then in effect provided for an award of reasonable attorney's fees to the plaintiff in an action involving, *inter alia*, alimony, child support, or custody).

Following remand to the trial court, Mother's appellate attorney, Cecilia Petersen, filed a supplemental affidavit on January 17, 2020, detailing her fees and expenses and explaining certain errors contained in her earlier fee affidavit. Ms. Petersen sought an award of $146,198.02 after removal of the incorrect entries. Father filed an objection to the affidavit, arguing that entries demonstrating "block billing," inaccuracies, and excessive hourly rates were improper. The trial court conducted a hearing concerning attorney's fees on January 23 and 24, 2020, hearing testimony from David Valone, one of Mother's trial attorneys; Ms. Petersen; and Ms. Petersen's former assistant.

On February 11, 2020, Father filed a post-trial memorandum regarding attorney's fees, arguing that time entries made by Ms. Petersen were fraudulent and duplicative. Mother filed a memorandum in response on February 14, 2020, explaining that Ms. Petersen had testified concerning her employment of a new billing system during the pendency of the case, which caused or contributed to certain billing errors. Ms. Petersen agreed during trial to remove any entries that were alleged to be duplicative. Mother also reported that on January 27, 2020, Father had named Ms. Petersen as a "conspirator" in a federal lawsuit alleging, *inter alia*, claims of fraud, extortion, and embezzlement—a copy of the proposed amended complaint was attached to Mother's memorandum. Mother

---

[1] The parties were never married.

stated that this was but one example of Father's litigious behavior that had increased her attorney's fees exponentially. Ms. Petersen provided detailed billing records demonstrating that various items had been removed, as elucidated in Mother's memorandum, "to avoid any appearance of impropriety."

On April 6, 2020, the trial court entered an order awarding to Mother attorney's fees incurred on appeal in the amount of $150,218.02. In determining a reasonable amount of attorney's fees to be awarded, the trial court considered the ten factors enumerated in Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5 ("RPC 1.5"), and analyzed the evidence presented as to each applicable factor. In doing so, the court found that Ms. Petersen's testimony, as well as that of a member of her staff, established that counsel had "expended a great deal of time and labor on a complex case with a lengthy procedural history" and provided "a plethora of evidence detailing the unusual and cumbersome issues that she had to manage while working on this appeal."

In addition, the trial court found, *inter alia*, that (1) Ms. Petersen was precluded from taking other clients due to being "consumed with this case"; (2) the hourly fee charged by Ms. Petersen was reasonable; (3) the appeal involved extraordinary circumstances, including that Father's actions resulted in Ms. Petersen's being made to do more work than would have been otherwise necessary; (4) Ms. Petersen obtained favorable results by prevailing on all issues on appeal; and (5) Ms. Petersen was a "reputable lawyer within the field of family law, and she performs her work with integrity and honesty." The court also noted that Ms. Petersen had voluntarily deleted charges totaling $9,480.00 during trial because she was unable to recall the circumstances relating to those charges, which the court found "understandable" given the complexity of the case. The court thus concluded that the remaining time entries reflected on Ms. Petersen's affidavit were "accurate, reasonable, and necessary."

Father subsequently filed a motion, date-stamped as having been filed on May 7, 2020, seeking to alter or amend the April 6, 2020 order, pursuant to Tennessee Rule of Civil Procedure 59, and alleging factual and legal mistakes by the trial court. The trial court entered an order on August 3, 2020, denying Father's motion upon concluding that it was untimely because it was filed more than thirty days following the court's April 6, 2020 order. The court proceeded to explain, however, that even if the motion had been timely, "the Court finds there is no basis in law or fact to support the motion" for various reasons detailed in the order.

On August 7, 2020, Father filed a motion seeking to "correct" the August 2020 order, arguing that although his counsel had filed the motion to alter or amend via facsimile on May 6, 2020, the trial court clerk's office had misdated the filing. Father's counsel filed a declaration in support of these assertions. The trial court conducted a hearing concerning the motion on August 12, 2020, and subsequently entered an order on September 25, 2020, determining that the motion to alter or amend had been timely filed.

The court therefore amended its previous order, reflecting that late filing was not a basis for denying the motion. The court reiterated that the motion had been properly denied, however, for the other reasons stated in its August 2020 order. Meanwhile, Father filed a notice of appeal on August 31, 2020.

The appellate record was filed with this Court on January 27, 2021. On February 9, 2021, this Court entered a show cause order directing Father to demonstrate that the notice of appeal was timely filed. Following Father's response, this Court entered an order on March 17, 2021, instructing the parties to brief the issue of whether this Court maintained subject matter jurisdiction to consider the appeal. This Court entered a subsequent order on March 22, 2021, directing the appellate court clerk to return the record to the trial court for removal of extraneous documents that were unrelated to the issues on appeal. The trial court resubmitted the appellate record on April 5, 2021.

On April 26, 2021, Mother filed a motion to dismiss the appeal, asserting that Father's motion to alter or amend had not been timely filed with the trial court because it was not properly filed via facsimile as defined in Tennessee Rule of Civil Procedure 5A.01(2). This Court denied the motion to dismiss "without prejudice to appellee's ability to raise any and all issues contained in the motion in her brief on appeal."

On April 30, 2021, Father filed a motion with this Court, seeking to supplement the appellate record with exhibits entered during the trial court's evidentiary hearing concerning attorney's fees, as well as with various pleadings. Father filed a subsequent motion to supplement on May 4, 2021, claiming that other documents, including deposition notices, motions to quash, and motions to compel depositions, had been omitted from the appellate record. On May 5, 2021, this Court remanded the matter to the trial court for the purpose of ruling on Father's motions to supplement. The trial court entered an order on May 26, 2021, denying the motions. Father then filed a motion in this Court requesting that the Court "order the trial court to substantively consider" his motions or "order the trial court clerk to supplement the record."

This Court initially entered an order on June 21, 2021, denying Father's motion. However, this Court subsequently entered an order on December 17, 2021, directing the trial court clerk to transmit a supplement to the record on or before January 6, 2022, containing the exhibits entered during the January 2020 trial. On January 4, 2022, Mother filed a "Request for Instruction," stating that the exhibits had been made part of the record in another appeal in this matter. This Court subsequently entered a show cause order, directing the parties to show cause why this Court should not take judicial notice of the exhibits filed in the other case. Inasmuch as the parties have not objected to our doing so, this Court has taken judicial notice of the exhibits entered during the January 2020 trial, as filed in a separate appeal with this Court.

- 4 -

## II. Issues Presented

Father presents the following issues for our review, which we have restated slightly:

1. Whether this Court possesses subject matter jurisdiction to consider this appeal because the trial court determined that Father had timely filed a motion to alter or amend.

2. Whether the trial court erred by refusing to allow a fair and accurate record to be transmitted to this Court for review and whether such refusal was a violation of Father's due process rights.

3. Whether the trial court erred by denying Father's request to supplement the appellate record with exhibits filed during the evidentiary hearing.

4. Whether the trial court erred by awarding to Mother and her counsel $150,218.02 in appellate attorney's fees.

5. Whether the trial court erred by awarding to Mother her expenses incurred during the appeal when this Court awarded solely attorney's fees in *Nelson I*.

6. Whether the trial court erred by awarding attorney's fees to Mother for work performed post-appeal.

7. Whether the trial court erred by awarding attorney's fees to Mother when Mother's counsel purportedly submitted false or fraudulent statements for services rendered.

8. Whether the trial court abused its discretion by making erroneous findings of fact to justify its award of attorney's fees to Mother.

## III. Standard of Review

As our Supreme Court has previously explained concerning review of a trial court's determination of a reasonable award of attorney's fees:

The trial court's determination of a reasonable attorney's fee is "a subjective judgment based on evidence and the experience of the trier of facts," *United Med. Corp. of Tenn., Inc. v. Hohenwald Bank & Trust Co.*, 703 S.W.2d 133, 137 (Tenn. 1986), and Tennessee has "no fixed

- 5 -

mathematical rule" for determining what a reasonable fee is. *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002). Accordingly, a determination of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. *Kline v. Eyrich*, 69 S.W.3d 197, 203 (Tenn. 2002); *Shamblin v. Sylvester*, 304 S.W.3d 320, 331 (Tenn. Ct. App. 2009). We presume that the trial court's discretionary decision is correct, and we consider the evidence in the light most favorable to the decision. *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010); *Keisling v. Keisling*, 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005). The abuse of discretion standard does not allow the appellate court to substitute its judgment for that of the trial court, *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998), and we will find an abuse of discretion only if the court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

*Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011).

IV.  Subject Matter Jurisdiction

Pursuant to this Court's March 17, 2021 order, the parties have briefed the issue of whether this Court maintains subject matter jurisdiction to consider the appeal. Subject matter jurisdiction "involves a court's power to adjudicate a particular controversy brought before it." *First Am. Trust Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 140 (Tenn. Ct. App. 2001). Our Supreme Court has previously concluded that "issues regarding a court's subject matter jurisdiction should be considered as a threshold inquiry" and "should be resolved at the earliest possible opportunity." *In re Estate of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012).

Ordinarily, a party may appeal a final judgment by filing a notice of appeal within thirty days of the trial court's entry of a judgment or order with regard to certain post-trial motions. *See* Tenn. R. App. P. 4(a)-(b). If a notice of appeal is untimely, this Court lacks subject matter jurisdiction over the case and must dismiss the appeal. *See Ball v. McDowell*, 288 S.W.3d 833, 836 (Tenn. 2009).

In the case at bar, Mother contends that Father's notice of appeal was untimely because his motion to alter or amend filed with the trial court was untimely. We note, however, that the trial court entered an order on September 25, 2020, determining as a matter of fact that the motion to alter or amend had been timely filed. Although Mother

raised no issues in her appellate brief and therefore has not specifically appealed this factual determination, Mother argues in her brief that Father's motion to alter or amend was untimely filed for various reasons, including that (1) the motion was not transmitted using a "Group 3 fax machine as defined in Tenn. R. Civ. P. 5A.01(2)," (2) the date and time of receipt of the motion were not noted on the court clerk's printed transmission sheet from its facsimile machine as required by Tenn. R. Civ. P. 5A.03, and (3) no proper certificate of service was attached to the motion pursuant to Tenn. R. Civ. P. 5.03.

We reiterate that our previous order denying Mother's motion to dismiss the appeal stated that it was "without prejudice to [Mother's] ability to raise any and all issues contained in the motion in her brief on appeal." However, Mother failed to raise any issues in a statement of issues in her brief. *See* Tenn. R. App. P. 27(a)(4). We therefore determine that any issue concerning the propriety of the trial court's factual finding that the motion to alter or amend was timely filed has been waived. *See Ethridge v. Estate of Ethridge*, 427 S.W.3d 389, 395 (Tenn. Ct. App. 2013) ("Issues not raised in the statement of the issues may be considered waived.").

Inasmuch as Father's notice of appeal was filed on August 31, 2020, less than thirty days following the trial court's August 3, 2020 order denying Father's timely motion to alter or amend, we determine that the notice of appeal was also timely and that this Court accordingly maintains subject matter jurisdiction to adjudicate the appeal. *See* Tenn. R. App. P. 4(a)-(b); *see also Ball*, 288 S.W.3d at 836.

V. Supplementation of Record

Father contends that the trial court erred by denying his request to supplement the record on appeal and that his due process rights were violated by the trial court. We note that Father filed two motions with this Court seeking to supplement the appellate record, one on April 30, 2021, and the other on May 4, 2021. This Court subsequently remanded the matter to the trial court for the purpose of ruling on Father's motions to supplement.

The trial court entered an order on May 26, 2021, denying the motions to supplement. Thereafter, Father filed a motion in this Court requesting that the Court "order the trial court to substantively consider" his motions or "order the trial court clerk to supplement the record." Although this Court initially denied Father's motion, we subsequently entered an order on December 17, 2021, directing the trial court to supplement the record with the exhibits from the January 2020 trial. As such, we will only address Father's arguments concerning the remaining items that he contends should have been included in the record.

Father posits that the trial court erred by disallowing supplementation of the record to include Father's motion to correct the trial court record and attached exhibits; Mother's response thereto; a "legible" copy of the trial court's September 15, 2020 order; a

conference call worksheet filed by Mother; and various notices of deposition and motions to quash or compel depositions. With regard to the content of the record on appeal, Tennessee Rule of Appellate Procedure 24 provides in pertinent part:

(a) Content of the Record. The record on appeal shall consist of: (1) copies, certified by the clerk of the trial court, of all papers filed in the trial court except as hereafter provided; (2) the original of any exhibits filed in the trial court; (3) the transcript or statement of the evidence or proceedings, which shall clearly indicate and identify any exhibits offered in evidence and whether received or rejected; (4) any requests for instructions submitted to the trial judge for consideration, whether expressly acted upon or not; and (5) any other matter designated by a party and properly includable in the record as provided in subdivision (g) of this rule.

The following papers filed in the trial court are excluded from the record: (1) subpoenas or summonses for any witness or for any defendant when there is an appearance for such defendant; (2) all papers relating to discovery, including depositions, interrogatories and answers thereto, reports of physical or mental examinations, requests to admit, and all notices, motions or orders relating thereto; (3) any list from which jurors are selected; (4) trial briefs; and (5) minutes of opening and closing of court. Any paper relating to discovery and offered in evidence for any purpose shall be clearly identified and treated as an exhibit. No paper need be included in the record more than once.

If less than the full record on appeal as defined in this subdivision is deemed sufficient to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal or if a party wishes to include any papers specifically excluded in this subdivision, the party shall, within 15 days after filing the notice of appeal, file with the clerk of the trial court and serve on the appellee a description of the parts of the record the appellant intends to include on appeal, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. If the appellee deems any other parts of the record to be necessary, the appellee shall, within 15 days after service of the description and declaration, file with the clerk of the trial court and serve on the appellant a designation of additional parts to be included. All parts of the record described or designated by the parties shall be included by the clerk of the trial court as the record on appeal. The declaration and description of the parts of the record

to be included on appeal provided in this subdivision may be filed and served with the declaration and description of the parts of the transcript to be included in the record provided in subdivision (b) of this rule. If a party wishes to include any papers specifically excluded in this subdivision, but fails to timely designate such items, the trial court clerk may supplement the record as provided for in subdivision (e) without modifying the previously prepared record.

* * *

(e) Correction or Modification of the Record. If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth. Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive. If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

With respect to the specific items that Father has requested be added to the record, we note that these items are either already contained within the appellate record or are improper for inclusion in the appellate record because they relate to discovery matters. *See id*. Furthermore, Father's supplementation requests were brought before the trial court, and the trial court denied Father's requests to supplement. As explained in Tennessee Rule of Appellate Procedures 24(e), the determination of the trial court concerning modification of the record is conclusive "absent extraordinary circumstances." As our Supreme Court has elucidated:

The procedure for correction or modification of the record reflects the policy of avoiding technicality and expediting a just resolution on the merits by according deference to the trial court's decision on which matters are properly includable in the record, thereby avoiding additional litigation on that subject alone. The specific purpose of Rule 24 is accommodated as well, since the trial judge is in the best position to determine which matters are necessary to "convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." *See also Artrip v. Crilley*, 688 S.W.2d 451, 453 (Tenn. [Ct.] App. 1985).

*Bradshaw v. Daniel*, 854 S.W.2d 865, 868-69 (Tenn. 1993). Father has demonstrated no extraordinary circumstances that would warrant relief on this issue.

Although Father claims various due process violations because the trial court's May 26, 2021 order denying supplementation was allegedly not served upon Father, Father has not established how he was prejudiced by this purported failure when (1) his counsel was sent a copy of this Court's May 5, 2021 order remanding the supplementation requests to the trial court and (2) he referenced the trial court's May 26, 2021 order in his motion for relief subsequently filed with this Court on June 10, 2021. Father also postulates that the trial court's May 26, 2021 order was prepared by opposing counsel and provided to the court "*ex parte*"; however, the record does not establish these allegations. The trial court attached to its May 26, 2021 order two other orders entered on May 18, 2021, which noted that Father had failed to appear for a hearing on May 17, 2021.

Because the trial court determined that supplementation of the record was unwarranted and because Father has failed to demonstrate extraordinary circumstances, the trial court's determination is conclusive. *See* Tenn. R. App. P. 24(e); *Bradshaw*, 854 S.W.2d at 868-69. We therefore determine Father's issues concerning supplementation of the record on appeal to be unavailing.

## VI. Attorney's Fee Award

Father raises several issues with respect to the trial court's attorney's fee award to Mother, including whether (1) the amount awarded was appropriate, (2) the trial court erred by awarding expenses when this Court awarded only attorney's fees, (3) the trial court erred by awarding attorney's fees incurred for post-appeal work, (4) the award had a proper basis when Mother's counsel allegedly submitted false or fraudulent statements, and (5) the trial court made erroneous findings of fact to justify its fee award. We will address each of these issues in turn, albeit in a slightly different order than presented by Father.

### A. Basis for the Fee Award

Father asserts that the trial court's attorney's fee award to Mother was predicated on false or fraudulent billing statements submitted by Mother's counsel and erroneous findings of fact made by the trial court. With regard to Ms. Petersen's billing statements, Father alleges that Ms. Petersen's entries contain "impossible dates and times and the entries internally conflict," seek "hours and hours worth of fees for reading one-paragraph documents" or "drafting a few pages of content," and fail to provide adequate evidence of the hours actually expended by Ms. Petersen on the matter. Upon careful review, we disagree.

At trial, Father's counsel was provided the opportunity to extensively cross-examine Ms. Petersen concerning her billing entries. In fact, many of the exhibits introduced at trial were documents placed in evidence by Father's counsel in an attempt

- 10 -

to demonstrate that Ms. Petersen spent an inordinate amount of time reviewing or drafting the documents in question. Ms. Petersen explained that in those instances, she had engaged in other associated work aside from simply reviewing or drafting the document, such as legal research, file review, discussing the issue with the client or co-counsel, and other related tasks. The trial court explicitly found Ms. Petersen to be a credible witness, and we note that "considerable deference is given to the trial court's determinations of the credibility and weight to be given to witness testimony because 'the trial court [had] the opportunity to observe the witnesses' demeanor and hear the in-court testimony.'" *Massey v. Casals*, 315 S.W.3d 788, 793-94 (Tenn. Ct. App. 2009) (*quoting Interstate Mech. Contractors, Inc. v. McIntosh*, 229 S.W.3d 674, 678 (Tenn. 2007)).

In addition, Ms. Petersen explained in some detail that she had employed new billing software during the pendency of the action, causing her to incur a learning curve concerning utilization of the new software for completing her billing entries. Ms. Petersen described how this change generated an issue with certain dates of service having been entered incorrectly. According to Ms. Petersen, because of the incorrect dates having been placed on certain entries, she had deducted the "questionable" entries from her fee total to avoid any appearance of impropriety. Ms. Petersen also articulated that due to the repetitive nature of some of the work performed, some entries appeared duplicative; however, Ms. Petersen had deducted the alleged "duplicate" entries. In total, Ms. Petersen ultimately deducted in excess of $9,000.00 from her total bill.[2]

The trial court credited Ms. Petersen's testimony regarding the time she expended representing Mother on appeal. In its April 6, 2020 order awarding attorney's fees, the trial court found that Ms. Petersen "expended a great deal of time and labor on a complex case with a lengthy procedural history." The court also found that through her own testimony, her affidavits, and the testimony of her former assistant, Ms. Petersen had provided a "plethora of evidence detailing the unusual and cumbersome issues that she had to manage while working on this appeal." As the court referenced, one such unusual circumstance was that Ms. Petersen and her staff were tasked with assembling the trial court record for transmission to this Court during the *Nelson I* appeal, an undertaking that spanned almost three weeks' time. As the trial court noted, the record consisted of 50 volumes of technical record, 78 volumes of transcript, and 311 exhibits and offers of proof. The court further found that Father's brief filed in the initial appeal was "not organized in a systematic manner that would allow a reasonable person under the circumstances to follow the 130 issues Father raised on appeal easily" and that Father's

---

[2] Father argues that Ms. Petersen's bills are "fraudulent" because of the inadvertent errors, discussed above, which Ms. Petersen acknowledged and remedied, and also because Ms. Petersen "submitted two, separate and distinct versions of her statement[s] for services." Again, Ms. Petersen explained that the later version submitted had corrected a date error concerning one entry but did not change the overall total hours expended or fees incurred. Father's arguments are unavailing.

citations to the record contained in his brief were often incorrect.[3]  As such, the court concluded that Ms. Petersen was "tasked with an unusually complex and difficult case, requiring extensive time and labor, not only in terms of research and writing, but organization, fact-checking, and at times, manual labor."

We determine that the above findings of the trial court were supported by the proof presented at trial.  Ms. Petersen, her former assistant, and her co-counsel each testified regarding the voluminous size of the record and the considerable difficulties encountered when attempting to respond to Father's issues raised on appeal.  Ms. Petersen testified concerning her time spent reviewing Father's initial brief lodged with this Court during the *Nelson I* appeal and then drafting and filing a motion to strike in response to that brief because it was noncompliant with the rules of this Court.  In addition to the significant amount of time required of Ms. Petersen and her assistant in compiling the appellate record, both witnesses testified concerning the incorrect record citations found in Father's appellate brief, warranting extensive review and response.  Ms. Petersen also testified concerning Father's many incorrect citations to authority, which also required response.

Ms. Petersen likewise reported that she spent many hours reviewing the transcript (because she was not trial counsel) and following up with the court reporter to ensure that the entire transcript was submitted to this Court.  Moreover, she was required to draft and respond to various motions filed during the pendency of the appeal, as well as drafting Mother's appellate brief.  Ms. Petersen's billing statements, as corrected, support her testimony concerning her efforts and time expended representing Mother on appeal.  As such, the evidence at trial preponderates in favor of the trial court's findings and conclusions concerning the time Ms. Petersen spent representing Mother in the *Nelson I* appeal.  Apart from cross-examining witnesses, Father presented no countervailing proof.

Regarding the trial court's findings of fact, those findings track the factors listed in RPC 1.5, which Tennessee courts are instructed to consider when making a determination regarding the reasonableness of an attorney's fee.  Those factors include:

(1)     the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)     the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

---

[3] Father points out that he actually raised 17 issues rather than 130 in his appellate brief during the initial appeal.  We note that the trial court was apparently referring to Father's "Statement of Issues on Appeal," filed with the trial court on May 3, 2017, wherein Father originally designated 130 issues on appeal.

(3)      the fee customarily charged in the locality for similar legal services;

(4)      the amount involved and the results obtained;

(5)      the time limitations imposed by the client or by the circumstances;

(6)      the nature and length of the professional relationship with the client;

(7)      the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8)      whether the fee is fixed or contingent;

(9)      prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10)    whether the fee agreement is in writing.

Having previously discussed the trial court's findings concerning the first factor, we note that the trial court also determined with regard to the second factor that based on the "extensive amount of time and labor required to take on the appeal," Ms. Petersen was likely precluded from accepting other employment she normally would have taken. The record supports this finding as well. Mr. Valone testified that he and Martha Meares, Mother's trial counsel, made the decision to recommend that Mother hire Ms. Petersen to handle the appeal because they did not have time to devote to the appeal and knew that it would require extensive work. Ms. Petersen's former assistant testified that she was at the Roane County courthouse every day for three weeks helping to compile the record and that Ms. Petersen was also present except for a day or two when she had to work on another matter. Ms. Petersen likewise testified that she spent nearly three weeks driving back and forth to Roane County to assist in compiling the record, spending days on end relative to this task. She also had to respond to Father's initial, non-compliant brief; respond to Father's other motions; and prepare and file a brief on Mother's behalf that addressed the seventeen issues ultimately raised by Father. Based on the hours expended by Ms. Petersen in representing Mother on appeal, we agree that she likely would not have had time to accept other employment. Father presented no proof to refute Mother's evidence regarding this issue.

With respect to the third factor, the trial court found that Ms. Petersen's billing rate of $300.00 per hour was reasonable based on the testimony presented. Mr. Valone testified that he worked in the same general practice field and in the same geographic area as Ms. Petersen and that his current hourly rate was $350.00. Mr. Valone opined that $300.00 per hour was reasonable for an attorney with Ms. Petersen's experience.

Ms. Petersen also testified that her fees were reasonable. Ms. Petersen stated in her supplemental affidavit that she had practiced law for thirty-four years with the most recent twenty-three years of experience focused on the area of domestic relations law. Father presented no proof to refute Mother's evidence regarding this issue, and the evidence supports the trial court's finding.

With regard to factor four and the amount of attorney's fees sought, the trial court found that although the amount of fees might seem extraordinary, the circumstances surrounding the appeal were also extraordinary. The court found that Father's failure to properly follow the rules of this Court often created more work for Ms. Petersen, and this finding is supported by her testimony. Also, the voluminous record and the numerous filings by Father in this Court support the hours expended by Ms. Petersen in working on the appeal in *Nelson I*.

In addition, with regard to the results obtained, as stated by this Court in *Nelson I*, "Mother has prevailed on every issue on appeal, and Father's brief is largely a compilation of conclusory statements with little actual argument or citation to authority." *Nelson I*, 2019 WL 337040, at *27. As such, the trial court correctly found that the time spent on the matter by Ms. Petersen and the results obtained supported her request for attorney's fees. Father presented no proof to refute Mother's evidence regarding this issue.

Concerning the fifth and sixth factors, the trial court found that although the client had imposed no time limitations, Ms. Petersen had seen the appeal through to conclusion from the time she was hired by Mother in 2017. With respect to factor seven, the court also found that Ms. Petersen was a member in good standing of the Tennessee Bar who had been practicing for over thirty years. Ms. Petersen's most recent twenty-three years were spent exclusively in the area of domestic relations. The court found that Ms. Petersen is a reputable lawyer who "performs her work with integrity and honesty," and the record supports those findings. Again, Father has presented no proof to the contrary.

As to the remaining factors, the fee in this case was not contingent, and the parties had no written agreement. As the trial court found, Ms. Petersen had not increased her hourly rate since her representation of Mother began. Based upon our thorough review of the record as a whole, the trial court's findings concerning the RPC 1.5 factors are supported by a preponderance of the evidence. We therefore determine Father's issues concerning the trial court's factual findings and Ms. Petersen's billing statements to be without merit.

B. Award of Expenses

Father contends that the trial court erred by awarding to Mother, as part of the overall award of attorney's fees, $458.02 in costs or expenses billed by Ms. Petersen. As

Ms. Petersen's billing statements demonstrate, these expenses were related to parking, copying and printing, and obtaining an electronic copy of the technical record.

In her appellate brief, Mother responds to Father's argument by stating that Father "points to no authority that the Trial Court could not award expenses." Although this may be true, we note that this Court's prior Opinion in *Nelson I* spoke only to attorney's fees and made no mention of expenses. *See Nelson I*, 2019 WL 337040, at *27. In fact, the entire section concerning attorney's fees stated:

> Mother requests that she be awarded her attorney fees on appeal. Litigants are generally required to pay their own attorney fees unless a statute or contract provision provides otherwise. *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998). In custody cases, Tenn. Code Ann. § 36-5-103(c) provides a basis for an award of attorney fees at trial and on appeal. When this case was initiated, Tenn. Code Ann. § 36-5-103(c) provided as follows:
>
> > The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.
>
> A decision to award attorney fees on appeal, however, is within the discretion of the appellate court. *Paschedag v. Paschedag*, No. M2016-00864-COA-R3-CV, 2017 WL 2365014, at *5 (Tenn. Ct. App. May 31, 2017). Mother has prevailed on every issue on appeal, and Father's brief is largely a compilation of conclusory statements with little actual argument or citation to authority. As such, we exercise our discretion to award Mother her attorney fees incurred on appeal.

*Id*. (footnote omitted). This Court accordingly remanded the matter to the trial court "for a determination of Mother's attorney fees incurred on appeal." *Id*.

Inasmuch as this Court's Opinion directed the trial court to award Mother her reasonable fees incurred on appeal but made no mention of awarding costs or expenses incurred by Mother's counsel, we conclude that the trial court's award of $458.02 in

expenses was improper. *See generally Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998) ("[W]hen an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court."). We note that in *Nelson I*, this Court relied upon Tennessee Code Annotated § 36-5-103(c) as authority for its award of attorney's fees, a statute that provides for recovery of "fees." By contrast, in other cases when this Court has awarded fees and expenses or costs on appeal, we have done so based on either a statute or contract that explicitly provided for such an award, and our Opinions have clearly stated that such costs or expenses would be included. *See, e.g.*, *Williams v. Williams*, 286 S.W.3d 290, 298 (Tenn. Ct. App. 2008) (expressly awarding "attorney's fees, costs, and expenses" on appeal based on Tennessee Code Annotated § 27-1-122, the frivolous appeal statute, which provides for an award of "just damages against the appellant, which may include . . . costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal"); *Jones v. Reda Homebuilders, Inc.*, No. M2020-00597-COA-R3-CV, 2021 WL 2375883, at *6 (Tenn. Ct. App. June 10, 2021) (expressly awarding "reasonable attorney's fees, costs, and expenses incurred in the litigation, including on appeal" based on specific contract language providing for same); *Cartwright v. Garner*, No. W2016-01423-COA-R3-CV, 2018 WL 3814632, at *3 (Tenn. Ct. App. Aug. 10, 2018) (expressly awarding "reasonable attorney's fees, costs, and expenses incurred on appeal" based on Tennessee Code Annotated § 35-15-1004(a), which provides for an award of "costs and expenses, including reasonable attorney's fees").

We conclude that the trial court erred in awarding expenses to Mother of $458.02. We therefore modify the trial court's overall fee award by deducting this amount.

## C. Post-Appeal Work

Father further argues that the trial court erred by awarding to Mother fees charged by her counsel for work performed post-appeal. We agree. We reiterate that in *Nelson I*, this Court remanded this matter to the trial court for a determination of the amount of reasonable attorney's fees incurred by Mother <u>during that appeal</u>. *See Nelson I*, 2019 WL 337040, at *27. No award was made concerning work performed by Mother's counsel following completion of the appeal in this Court.

Reviewing Ms. Petersen's billing statements, we note that her initial statement begins on June 10, 2017, when she was first contacted with regard to representing Mother on appeal in *Nelson I*. The statement concludes on January 29, 2019, immediately following the release of this Court's opinion in *Nelson I*. As such, this statement appears to encompass the work performed by Ms. Petersen relevant to that appeal, with fees totaling $132,675.00 as reflected thereon.[4]

---

[4] This amount does not include the costs of $458.02 discussed above.

The second statement submitted by Ms. Petersen reflects a beginning date of February 19, 2019, and an ending date of January 6, 2020, dates which occurred subsequent to completion of the appeal in *Nelson I*. Moreover, our review of the entries demonstrates that they do not appear to relate to work performed with regard to the appeal in *Nelson I*. We therefore determine that these additional fees of $22,200.00 should be disallowed as they did not represent fees incurred in that appeal.

Based upon Ms. Petersen's initial statement total of $132,675.00 in fees incurred on appeal in *Nelson I* and her deductions from that total of $9,135.00 (reflected in her supplemental affidavit) and $345.00 (acknowledged during her trial testimony), we determine that the trial court's fee award should be modified to $123,195.00 to properly reflect the fees incurred by Mother on appeal in *Nelson I*. We accordingly modify the trial court's award of fees to Mother from $150,218.02 to $123,195.00.

## D. Amount of Fee Award

Having modified the trial court's fee award to appropriately compensate Mother for her attorney's fees incurred during the *Nelson I* appeal, we determine that the evidence supports the amount of this fee award as reasonable pursuant to the factors listed in RPC 1.5. As previously noted, the trial court's factual findings concerning these factors are supported by a preponderance of the evidence. Ms. Petersen clearly expended a significant amount of time and effort representing Mother in a complex appeal, as reflected on Ms. Petersen's first billing statement, and Ms. Petersen was successful in that endeavor. The trial court's award, as modified, represents a fair and reasonable amount of attorney's fees for the work performed by Ms. Petersen in *Nelson I*. We therefore affirm the trial court's award as modified herein.

## VII. Conclusion

For the foregoing reasons, the trial court's judgment is affirmed as modified, reducing the trial court's award of attorney's fees to Mother from $150,218.02 to $123,195.00. This matter is remanded to the trial court for modification and enforcement of the judgment and collection of costs below. Costs on appeal are taxed to the appellant, Loring Justice.

s/ Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE

- 17 -